# EXHIBIT B

LBIFERD

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     MICHAEL L. FERGUSON ET AL.,,
 3
                  Plaintiffs,
 4
              v.                          17 CV 6685 (ALC)
 5                                        Telephone Conference
     RUANE CUNIFF & GOLDFARB INC.,
 6
                  Defendants.
 7   ------------------------------x
                                          New York, N.Y.
 8                                        November 18, 2021
                                          12:07 p.m.
 9   Before:
                      HON. ANDREW L. CARTER, JR.,
10
                                          District Judge
11
                      APPEARANCES VIA TELECONFERENCE
12
     MILLER SHAH, LLP
13        Attorneys for Plaintiffs
     BY:  JAMES MILLER
14        ALEC BERIN
             AND
15   DUCKWORTH, PETERS, LEBOWITZ, OLIVIER, LLP
     BY:  MONIQUE OLIVIER
16
     SCHULTE, ROTH & ZABEL, LLP
17        Attorneys for Defendant Ruane
     BY:  ROBERT E. WARD
18        FRANK W. OLANDER
19   PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
          Attorneys for DST Defendants
20   BY:  LEWIS R. CLAYTON
          JEFFREY J. RECHER
21
     THE KLAMANN LAW FIRM
22        Attorneys for Intervenor Plaintiffs, Arbitration Claimants
     BY:  ANDREW SCHERMERHORN
23        KENNETH McCLEAN
24   KENT, BEATTY & GORDON, LLP
          Attorneys for Intervenor Plaintiffs, Canfield and Mendon
25   BY:  JOSHUA B. KATZ
```

LBIFERD

| | |
|---|---|
| 1 | (The Court and all parties appearing telephonically) |
| 2 | (Case called) |
| 3 | THE DEPUTY CLERK:  Counsel please state your |
| 4 | appearances for the record.  For the plaintiff? |
| 5 | MR. MILLER:  Good afternoon, your Honor.  This is |
| 6 | James Miller for the plaintiffs, and with me is my colleague, |
| 7 | Alec Berin, and our co-counsel, Monique Olivier. |
| 8 | THE DEPUTY CLERK:  And for defendant Ruane? |
| 9 | MR. WARD:  On behalf of defendant Ruane, this is |
| 10 | Robert Ward from Schulte, Roth and Zabel, with my colleague, |
| 11 | Frank Olander. |
| 12 | THE DEPUTY CLERK:  And for the DST defendants? |
| 13 | MR. CLAYTON:  This is Lew Clayton from Paul, Weiss for |
| 14 | DST.  With me is my partner, Jeff Recher. |
| 15 | THE DEPUTY CLERK:  And for the intervenor plaintiff? |
| 16 | MR. SCHERMERHORN:  Thank you.  This is Andy |
| 17 | Schermerhorn for the arbitration claimants, and with me is my |
| 18 | colleague, Kenneth McClean. |
| 19 | THE DEPUTY CLERK:  Thank you. |
| 20 | MR. KATZ:  And also, it's Josh Katz, K-a-t-z, for the |
| 21 | intervenor plaintiffs, Canfield and Mendon. |
| 22 | THE DEPUTY CLERK:  Thank you, Mr. Katz. |
| 23 | THE COURT:  Okay.  Good afternoon.  I hope everyone is |
| 24 | safe and healthy. |
| 25 | Before the Court is a motion for a preliminary |

1    injunction brought by DST Systems, Incorporated; the Advisory

2    Committee of the DST Systems, Inc. 401(k) Profit Sharing Plan;

3    and the Compensation Committee of the Board of Directors of

4    DST.

5          Since the parties have fully briefed this motion, I am

6    prepared to rule orally on the record today.  First, the DST

7    defendants have requested permission to file under seal the

8    declaration of Jeffrey Recher and certain attached exhibits to

9    the DST defendants' response to the arbitration claimants'

10    opposition in order to protect the confidentiality interests of

11    the arbitration claimants, as these exhibits include

12    information connected to the arbitrations, which, per the

13    arbitration agreement, requires the arbitration to be kept

14    confidential.

15          Under Second Circuit law, judicial documents are

16    afforded a presumption of public access.  The weight of this

17    presumption is governed by the role of the material at issue

18    and the material's value to the public.  That's *Lugosch v.*

19    *Pyramid Company of Onondaga*, 435 F.3d 110 at 119 (2d Cir.

20    2006).  The presumption must be balanced against competing

21    factors, which include the privacy interests of those resisting

22    disclosure.  That's *Lugosch* 435 F.3d at 120.

23          The confidentiality interests of the arbitration

24    claimants outweigh the value of the information to the public.

25    Accordingly, I grant the DST defendants' motion to seal.

LBIFERD

1          I assume the parties are familiar with the facts and

2     procedural history.  In relevant part, on August 17th, 2021, I

3     certified, under Federal Rule of Civil Procedure 23(b)(1), a

4     mandatory non-opt-out class of participants and beneficiaries

5     of the DST Systems, Inc. 401(k) Profit Sharing Plan from

6     March 14th, 2010, through July 31st, 2016, excluding plan

7     fiduciary.

8          I also held that the claims at issue in this matter

9     are not covered by the arbitration agreement.  Since I issued

10    this order, members of the class, who have brought claims in

11    arbitration, and their counsel have continued to litigate

12    individual claims through arbitration and to file new actions

13    to confirm arbitration awards in the Western District of

14    Missouri.

15         The DST defendants requested that I issue a temporary

16    restraining order and preliminary injunction enjoining the

17    arbitration claimants from instituting new actions or

18    litigating in arbitration, or other proceedings, matters

19    arising out of or relating to the facts or transactions alleged

20    in the amended complaint.

21         I denied the TRO request, and ordered the arbitration

22    claimants to show cause why a preliminary injunction should not

23    be issued.  I also ordered the parties to address the issue of

24    judicial estoppel.

25         The DST defendants have asked that I exercise my

1  authority under the All Writs Act or, alternatively, under

2  Federal Rule of Civil Procedure 65, to enforce my August class

3  certification order.  Under the All Writs Act, federal district

4  courts can issue all writs necessary or appropriate in aid of

5  their respective jurisdictions and agreeable to the usages and

6  principles of the law, 28 U.S.C. Section 1651(a).

7  The All Writs Act empowers courts to issue

8  extraordinary writs as may be necessary or appropriate to

9  effectuate and prevent the frustration of orders it has

10  previously issued.  *United States v. International Brotherhood*

11  *of Teamsters, Chauffeurs, Warehousemen and Helpers of American*

12  *AFL-CIO,* 907 F.2d 277 at 280 (2d Cir. 1990); quoting *United*

13  *States v. New York Tel.*, 434 U.S. 159 at 172 from 1977.

14  Certification of a mandatory class under rule 23(b)(1)

15  is intended to address the challenges that would come from

16  individual cases resulting in varying adjudications over

17  defendants' alleged breach and how to measure the damages and

18  incompatible standards and conflict between various court

19  orders.  *Sacerdote v. New York University*, No. 16-CV-6284, 2018

20  Westlaw 840364, at page 6, (S.D.N.Y. Feb. 13, 2018).

21  Conditional certification of a national mandatory

22  class action, pursuant to Rule 23(b)(1)(B) of the Federal Rules

23  of Civil Procedure, supersedes all litigation against the

24  defendants pending in federal and state forums, such that the

25  effect of conditional class certification is for all pending

1    state and federal cases to become part of the mandatory class

2    and cease to exist as independent cases. *In re: Joint E. & S.*

3    *Dist. Asbestos Litigation*, 134 F.R.D. 32, 36 (E. & S.D.N.Y.

4    1990).

5         And my class certification order explained as much.

6    There, I stated allowing multiple actions, each of which would

7    seek similar or the same relief from the defendants on behalf

8    of the plan, would potentially prejudice individual class

9    members and would threaten to create incompatible standards of

10   conduct for the defendants.  That's ECF 311 at 13.

11        The Second Circuit has stated that a Federal Court may

12   enjoin an arbitration that the Court determines is not

13   otherwise valid.  *In re: Am. Exp. Financial Advisors*

14   *Securities Litigation*, 672 F.3d 113, 140 (2d Cir. 2011).

15        Additionally, a Federal Court may enjoin actions in

16   other jurisdictions that would undermine its ability to reach

17   and resolve the merits of the federal suit before it.  *State*

18   *Farm Mutual Auto Insurance Company v. Parisien*, 352 F. Supp. 3d

19   215, 224 (E.D.N.Y. 2018).

20        The arbitration and litigation over the arbitration

21   claimants have engaged in since my class certification order

22   quite clearly are in frustration of that order, and therefore,

23   I find that the instant injunction is necessary to protect this

24   Court's jurisdiction.  If an injunction is entered pursuant to

25   the All Writs Act, the Court need not analyze the factors to be

LBIFERD

considered when ruling on a preliminary injunction motion under
Federal Rule of Civil Procedure 65. *In re: Baldwin-United
Corporation*, 77 F.2d 328 at 338 (2d Cir. 1985). However, I
find that the DST defendants have also satisfied the
requirements under rule 65.

To succeed on a preliminary injunction motion, a
litigant must establish: One, irreparable harm absent the
injunctive relief; and two, either, A, a likelihood of success
on the merits, or, B, sufficiently serious questions going to
the merits to make them a fair ground for litigation and a
balance of hardships tipping decidedly towards the party
requesting the preliminary relief. *Jackson Dairy, Incorporated
v. HP Hood and Sons, Incorporated*, 596 F.2d 70 at 72 (2d Cir.
1979).

First, turning to irreparable harm. To establish
irreparable harm, a party seeking preliminary injunctive relief
must show that there is a continuing harm which cannot be
adequately redressed by final relief on the merits and for
which money damages cannot provide adequate compensation.
*Kamerling v. Massanari*, 295 F. 3d 206 at 214 (2d Cir. 2002).

The DST defendants claim that they will be irreparably
harmed by wasting resources when litigating non-arbitrable
claims in parallel proceedings in arbitrations. Indeed, courts
in this circuit have found irreparable harm where, absent an
injunction, litigants would be forced to spend resources in

numerous litigations, rather than resolving them in one matter. See, for example, *Parisien*, 352 F. Supp. 3d at 233.

This is especially true where parallel proceedings in arbitrations result in awards that might eventually be, at best, inconsistent with this Court's ruling and, at worst, essentially ineffective. *Allstate Insurance Company v. Elzanaty*, 929 F. Supp. 2d 199 at 222 (E.D.N.Y. 2013).

As I stated in the class certification order, rule 23(b)(1) seeks to avoid multiple actions that would create conflicting standards of conduct. Thus, DST would be irreparably harmed by being forced to expend resources defending non-arbitrable claims in arbitrations and other actions.

In evaluating whether the DST defendants are likely to succeed on the merits, or whether there is a sufficiently serious question going to the merits to make them a fair ground for litigation, the parties have suggested that, for this matter, success on the merits refers to the issue of whether the class is likely to be maintained such that the arbitration claimants' claims cannot be brought in arbitration.

I already held in my August order that, in line with the Second Circuit's ruling in *Cooper v. Ruane*, 990 F.3d 173 (2d Cir. 2021), the claims were not arbitrable and, therefore, I certified the mandatory class under rule 23(b). In the same vein, I find that the DST defendants are likely to succeed on

LBIFERD

1   the merits.

2        The balance of the hardships also favors the DST

3   defendants.  As discussed with regard to irreparable harm, the

4   DST defendants will be forced to defend against various and

5   conflicting adjudications and to expend unnecessary resources.

6   *Parisien*, 352 F. Supp. 234, stating that the Court need not

7   pause on this question for long, as the irreparable harm

8   factors discussed above also tip the equities squarely in the

9   movant's favor.

10        Turning to judicial estoppel.  Judicial estoppel

11   applies if:  One, a party's later position is clearly

12   inconsistent with its earlier position; two, the party's former

13   position has been adopted in some way by the courts in the

14   earlier proceeding; and, three, the party asserting the two

15   positions would derive an unfair advantage against the party

16   seeking estoppel.  *DeRosa v. National Envelope Corporation*, 595

17   F.3d 99, 103 (2d Cir. 2010) (citing *New Hampshire v. Maine*, 532

18   U.S. 742 at 749 (2001).

19        Judicial estoppel is ultimately not relevant here.  In

20   the Western District of Missouri *DuCharme* action, the DST

21   defendants did previously support the position that the Plan's

22   claim should be adjudicated in arbitrations.  However, the

23   relevant inquiry for which the DST defendants have established

24   its current position, is necessarily different than the inquiry

25   there.

1     The DST defendants are not here advocating for whether

2  or not the claims are arbitrable.  That question was decided in

3  my August class certification order.  Rather, they are

4  asserting that in light of the class certification order,

5  parallel litigations of the claims encompassed by the order

6  cannot continue.  Thus, the DST defendants are not judicially

7  estopped here.  See *American Manufacturers Mutual Insurance*

8  *Company v. Payton Lane Nursing Home, Incorporated,* 704 F. Supp.

9  2d 177 at 197 to 98 (E.D.N.Y. 2010).  Where litigant did not

10  make any earlier representation on relevant issue, there is no

11  previous position which is inconsistent for the purposes of

12  judicial estoppel.

13     I also acknowledge the decisions of the Western

14  District of Missouri confirming arbitration awards for claims

15  at issue here, and I certainly do not mean to disrespect that

16  court's authority and jurisdiction.  However, our circuit has

17  spoken clearly on this matter, compelling me to issue this

18  ruling.  Accordingly, I grant the DST defendants' motion for a

19  preliminary injunction.

20     It is hereby ordered that all members of the Federal

21  Rule of Civil Procedure 23(b)(1) class, certified by this Court

22  on August 17th, 2021, including the arbitration claimants, are

23  enjoined from instituting new actions or litigating, in

24  arbitration or other proceedings against the DST defendants,

25  matters arising out of or relating to the facts or transactions

LBIFERD

1    alleged in the Ferguson amended complaint.  This injunction

2    covers any pending and future arbitrations and actions.

3         With regard to the arbitration awards that have been

4    entered against DST, I would like the parties to submit

5    briefing on the issue of how those awards should be handled, in

6    light of the class certification order and this injunction.

7    The parties should submit a proposed joint briefing schedule by

8    Wednesday, November 24th, 2021.

9         Additionally, the class certification order, and now

10   this order, mooted the claims in the related Canfield and

11   Mendon cases.  Accordingly, those cases are dismissed.

12        With respect to the amount of security to be posted by

13   the DST defendants, I would like to hear from the parties on

14   the amount they feel is appropriate.  First, I'll hear from the

15   arbitration claimants.

16        MR. McCLEAN:  Judge, we -- as you know, we have

17   obtained verdicts and judgments in excess of $50 million.  No

18   less than $100 million should be posted, we believe, under

19   these circumstances.  Kenneth McClean.

20        THE COURT:  Yes.  Counsel, please just state your name

21   before you speak.

22        Okay.  Let me hear from the DST defendants.

23        MR. CLAYTON:  Lew Clayton, your Honor, from Paul,

24   Weiss for the DST defendants.  I would like to, if the Court

25   would think it's helpful, to have short briefing on that

LBIFERD

1    question because this is a situation where DST is a subsidiary

2    of SS&C, a large New York Stock Exchange traded company, and

3    there's no question that the company is good for these -- any

4    of these obligations, No. 1.

5           And No. 2, all Mr. McClean, representing the

6    arbitration claimants, has said is he has some awards, which

7    are in various stages of the arbitration.  He has no right, at

8    this point, to security for those awards.  The only security

9    that he could seek is any damage that would occur because of

10   the activity of the Court's injunction.

11          To just say that he is harmed and his clients are

12   harmed by the full amount of the awards that are, as I say, in

13   various stages, up through the chain of appeal, awards also

14   that we think are not valid under Cooper, to say that the

15   injunction causes harm equal to every dollar of those awards, I

16   respectfully submit makes no sense.

17          The only damage is the delay that they will face if,

18   for some reason, this Court's injunction is overturned.  And

19   there's no proof.  Mr. McClean's pure statement that he has

20   judgments in an approximate -- or awards in that approximate

21   amount is, I respectfully submit, not anything close to proof

22   of damage from delay.  And as I say, your Honor, if it will be

23   helpful to the Court, I think each party could very quickly

24   submit a piece of paper to your Honor on that issue.

25          THE COURT:  Okay.  Any response from the arbitration

LBIFERD

1   claimants?

2           MR. McCLEAN:  I mean, I certainly don't object to him

3   writing something in response, Judge, but I didn't really

4   understand what he said.

5           MR. CLAYTON:  I could repeat it, your Honor, if that

6   would be useful for the Court.

7           THE COURT:  I don't think that that would be useful.

8   I understood what counsel said.

9           MR. CLAYTON:  Thank you.

10          THE COURT:  Why don't we go ahead and have counsel

11  just turn something around very quickly on this issue regarding

12  the security.  Let's have the DST defendants submit something

13  by, let's say, something by end of day tomorrow, and the

14  arbitration claimant can respond by the end of the day on

15  Monday.

16          MR. CLAYTON:  Okay.  Thank you, your Honor.

17          THE COURT:  Okay.  Is there anything else from the

18  parties?  Okay.  Hearing nothing -- okay, go ahead.  Is there

19  something?

20          MR. MILLER:  Your Honor, this is James Miller.  I was

21  just going to say nothing for the plaintiff.  Thank you very

22  much.

23          THE COURT:  All right.  So I'll get these quick letter

24  briefs in quickly and rule on the amount of security.

25          Is there anything else from anyone?

LBIFERD

1    MR. SCHERMERHORN:  Judge, just for clarification.

2    THE COURT:  Make sure you just identify yourself

3    before you speak.

4    MR. SCHERMERHORN:  Mr. Schermerhorn for the

5    arbitration claimants.  There are cases presently pending in

6    the Eighth Circuit Court of Appeals, as well as in the Western

7    District of Missouri in which arbitration awards have been

8    confirmed and appealed.

9    The Eighth Circuit and the Western District have both

10   held, contrary to the Second Circuit, that these claims are

11   arbitrable as far back as in the *DuCharme* case.  As for those

12   cases presently pending in the Eighth Circuit, there will be

13   briefs due to the Eighth Circuit.  I don't suspect that your

14   injunction applies to those pending matters because certainly

15   the Court doesn't think that it can enjoin either the Eighth

16   Circuit or the Eighth Circuit's request that we brief various

17   issues.

18   MR. CLAYTON:  Your Honor, this is Lew Clayton for DST.

19   I would suspect that I think the parties now have an

20   obligation, at the very least, to inform the Eighth Circuit of

21   your Honor's ruling.  And I think what we would do is inform

22   those courts of your ruling, and I think it is likely those

23   courts will afford comity to this Court's ruling and stay the

24   actions of before them.  But I don't think that that fact is a

25   reason to make any change in your Honor's order.

LBIFERD

1              THE COURT:  Okay.  I agree with counsel for DST.  You

2     can certainly notify the Eighth Circuit of this ruling, yes.

3              Was there something else you were going to say,

4     counsel?

5              MR. SCHERMERHORN:  I guess, Judge, no.  We'll make

6     that notification, but to the extent we're ordered by the

7     Eighth Circuit to do something, then I think we're -- you know,

8     I'm sitting here in the Eighth Circuit.

9              THE COURT:  I understand that.  Obviously, again, we

10    don't need to get into all of these other things.  Obviously,

11    if the Eighth Circuit orders you to do something, that's

12    different than you -- whatever.  I won't make any sort of

13    speculative rulings on what the Eighth Circuit might or might

14    not do, but you should notify them and the Eighth Circuit will

15    do what it will do.

16             Anything else from the parties?

17             (Pause)

18             Okay.  We are adjourned.  Thank you.

19             (Adjourned)

20

21

22

23

24

25